# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 12, 2001

## STATE OF TENNESSEE v. MARK WALKER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-D-2673     Carol Soloman, Judge**

_____

**No. M2001-00341-CCA-R3-CD - Filed July 16, 2002**

_____

The defendant was convicted of one count of theft of property, one count of aggravated assault, two counts of criminal simulation, one count of evading arrest, and one count of possession of drug paraphernalia.  The criminal simulation convictions were merged by the trial court, and the defendant was sentenced as follows:  four years for theft of property, four years for criminal simulation, ten years for aggravated assault, and eleven months and twenty nine days for both evading arrest and possession of drug paraphernalia. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions for theft, criminal simulation, and evading arrest.  He also alleges that the trial court failed to exclude from evidence hearsay testimony and statements to law enforcement in violation of his Fifth Amendment rights.  Further, the defendant asserts that the trial court erred by failing to instruct the jury on the lesser-included offense of attempted criminal simulation.  Finally, the defendant challenges the length and manner of service of his sentences.  After a review of the record, we reverse and dismiss the defendant's conviction of criminal simulation.  The remaining judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part,**
**Reversed and Dismissed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Ross E. Alderman, District Public Defender, and Carol Dawn Deaner, Assistant Public Defender, for the appellant, Mark Walker.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Mark Walker, was indicted for the following offenses: Count One, theft of property with a value of over $500.00; Count Two, evading arrest; Count Four, aggravated assault by use or display of a deadly weapon; Count Five, criminal simulation; Count Six, criminal simulation; and Count Seven, possession of drug paraphernalia. After a jury trial, the defendant was convicted on all counts. Upon a motion by the defendant, the trial court merged the convictions for Counts Five and Six, criminal simulation. The defendant was sentenced as a Range II Multiple Offender as follows: four years (4) for Count One, theft of property with a value of over $500.00; eleven months and twenty-nine days for Count Two, evading arrest; ten (10) years for Count Four, aggravated assault by use or display of a deadly weapon; four (4) years for Count Five/Six, criminal simulation; and eleven months and twenty-nine days for Count Seven, possession of drug paraphernalia. The trial court ordered all the sentences to be served consecutively for an effective sentence of nineteen years, eleven months and twenty-eight days.

The defendant filed a timely motion for new trial, which was denied by the trial court with the exception of the motion to merge the criminal simulation counts. The defendant filed a timely appeal raising the following issues: (1) whether there was sufficient evidence to support the defendant's convictions of theft of property with a value of over $500.00, evading arrest, and criminal simulation (Counts One, Two, and Five/Six); (2) whether the trial court erred by admitting the defendant's pre-Miranda statements to law enforcement, which were not disclosed to the defendant prior to trial; (3) whether the inventory list of stolen merchandise was inadmissible hearsay; (4) whether the trial court erred by refusing to instruct the jury on the lesser-included offense of attempted criminal simulation; and (5) whether the trial court properly sentenced the defendant to the maximum in the applicable range for each count to be served consecutively.

**FACTS**

Detective Ron Bright, of the Goodlettsville Police Department, testified that he works part-time as a security guard for the Dillard's department store located in the Rivergate Mall in Goodlettsville. While working at Dillard's, he observed the defendant and another man, Tony Lark, in the men's clothing section. The two men were not standing together, but Detective Bright observed them "come together" and converse as if they were together. Detective Bright testified that he was suspicious of the defendant because of the way he was dressed. His clothes appeared dirty and generally unkept. He noticed that the defendant was carrying two bags; one was a plastic Dillard's bag and the other an opaque garment bag similar to those used by dry cleaning businesses. Detective Bright observed the defendant take a jacket from one of the clothing racks and conceal it beneath the garment bag. He radioed the other security officer on duty, Keith Bean, for assistance.

Shortly after Officer Bean arrived, Mr. Lark approached Detective Bright and said, "I know you." Thereafter, Mr. Lark was arrested, and Sergeant Bean escorted him to the security office. Detective Bright then asked the defendant, who was about twenty feet away, to come

over and talk with him. The defendant complied, and Detective Bright identified himself as a police officer and security for Dillard's. He asked if the defendant had receipts for the merchandise in his possession. The defendant said that he did and put his hands in his pockets as if he were searching for a receipt. Detective Bright became uncomfortable when the defendant put his hands in his pockets and instructed the defendant to remove his hands from his pockets. When the defendant did not comply with the detective's request, Detective Bright took a step back and began to reach for his service weapon. He testified that the defendant had a strange expression on his face. He told the defendant, "I know what you're up to," and "it isn't worth it." He advised the defendant to take his hands out of his pockets and go with him to the security office. The defendant then took his hands out of his pockets and picked up the two bags, which he had previously set down beside him. He threw the bags towards Detective Bright and starting running towards the exit of the store.

Detective Bright yelled for the defendant to stop and began to run after him. The defendant did not stop. As he chased the defendant, Detective Bright used his police radio to call the Goodlettsville Police for assistance. He gave a description of the defendant over the radio and information on the direction the defendant was running. Outside the mall, Detective Bright lost sight of the defendant for a few moments but continued to run in the same general direction as he had last seen the defendant. Upon running a little further, he saw the defendant, a police officer, and another man standing together. They appeared to be in a physical struggle. Detective Bright then observed the defendant break loose and the other two men chase after him. By the time Detective Bright got to the area, however, the defendant had been apprehended by the police officer.

Detective Bright took charge of the defendant, who was already handcuffed. He did a search of the defendant's person, incident to the arrest, during which he found a driver's license and social security card bearing the name Wayman Cochran. The driver's license picture was the defendant's. Detective Bright testified that he immediately noticed that the identifications did not look right and took his own driver's license out to compare them. He concluded that the identifications were not real and asked the defendant his name. The defendant responded, "You have my identification." The detective asked his name again, and the defendant responded, "You have it there, what does it say?" The detective said, "I know what it says, I want to know if this is you." The defendant refused to answer, and the detective told him that he needed to know if he was Wayman Cochran, because if he was not, then he was guilty of criminal impersonation. The defendant responded, "That's me," and Detective Bright booked him under the name Wayman Cochran but later learned that the defendant's name was Mark Walker. Detective Bright read the defendant his Miranda rights after placing him in a police car a few minutes later.

Detective Bright also found a glass item in the defendant's pocket, which he opined to be a crack pipe. Although the pipe was not tested for drug residue, Detective Bright testified that, based upon his experience, it appeared to have been used to smoke crack cocaine. In addition, Detective Bright found cigarette rolling papers in the defendant's pocket. Detective Bright eventually transported the defendant, along with Mr. Lark, back to the Dillard's store and then to the police department.

With regard to the merchandise in the defendant's possession when Detective Bright approached him, Detective Bright testified that he prepared a list of the items he found in the two bags the defendant was carrying. He also recorded the price of each item from the price tag. During his testimony, Detective Bright read the list of items, along with their corresponding price, to the jury. There were two men's shirts, three pair of men's pants, and two men's leather jackets. The total price for these items was $630.00. According to Detective Bright, none of the items had been purchased, and the defendant did not have permission to have the items concealed in his possession.

Sergeant Keith Bean, of the Sumner County Sheriff's Department, testified that he also works as a security officer for Dillard's department store. He testified that Detective Bright radioed for assistance in observing two shoplifting suspects in the men's department of the store. Sergeant Bean went to the men's department where he observed primarily Mr. Lark. Shortly thereafter, he observed Mr. Lark conceal an item of merchandise. He approached Mr. Lark and asked him about the merchandise in his possession. At the same time, Detective Bright was standing nearby questioning the defendant. Mr. Lark was cooperative and accompanied Sergeant Bean to the security office located within the store. Sergeant Bean testified that he became concerned when Detective Bright and the defendant did not come to the security office after a few minutes. However, he later learned what had happened when he called the Goodlettsville Police Department to inquire about Detective Bright's whereabouts. Sergeant Bean did not observe the defendant conceal any merchandise or run from the store.

The victim of the aggravated assault, William Saunders, testified that he was traveling to O'Charley's restaurant, near the Rivergate Mall, with his wife and two children when he saw the defendant run past their van and in front of the vehicle ahead of them. His wife was driving and came to a stop when the vehicle in front of them stopped for the defendant. The victim did not see Officer Bright chasing the defendant or know why the defendant was running, but the victim got out of his van and began to watch the defendant. The defendant ran behind some bushes. The victim was standing in the roadway when a police car approached with its blue lights activated. The victim did not know if the police officer was looking for the defendant; however, he waved to the police car and pointed towards the defendant in the bushes. The police officer pulled his car over and stopped. Then, the defendant ran out of the bushes and punched the victim in the face. The victim grabbed the defendant by the shirt and tried to hold him until the police officer could get to them. The police officer got out of the car and approached the two men. The defendant broke free from the victim and ran. The police officer and the victim ran after the defendant. The police officer sprayed the defendant with "freeze" as he ran, and the victim eventually tackled the defendant. The police officer then handcuffed the defendant and placed him under arrest.

The victim noticed that there was blood on his shirt and discovered that his face had been cut. Although he did not see anything in the defendant's hand at the time, the defendant apparently cut the victim's face when he hit him. Testimony by the police officer revealed that the defendant used a box cutter to cut the victim. The victim did not feel that he had been cut but required around a hundred stitches to his left cheek as a result of the cut.

-4-

Officer Brian Harris, of the Goodlettsville Police Department, testified that he was on patrol in his police car near the mall where Detective Bright was working when he heard Detective Bright on his radio. Although Detective Bright's radio transmission was not clear, Officer Harris could tell that he was running and assumed that he was chasing someone near the mall. Officer Harris testified that he activated his lights and siren and drove to the exact location given by Detective Bright over the radio. As he pulled into the area near O'Charley's restaurant, he saw the victim standing in the roadway pointing towards some shrubs.

Officer Harris pulled his car to a stop and saw the defendant run out of the shrubs towards the victim. The victim put his hands out and pushed the defendant to a stop. Officer Harris then saw the defendant strike the victim in the face. He noticed that the defendant did not punch the victim "straight with [his] fist" but, instead, punched in "a slashing-type motion." However, he did not see anything in the defendant's hand. Officer Harris ran to the defendant and sprayed him with pepper spray to subdue him. The defendant immediately dropped something that Officer Harris at the time believed to be a cigarette lighter. The defendant ran away, and Officer Harris chased after him spraying him several times with pepper spray. Officer Harris also shouted for the defendant to get on the ground. The defendant was unaffected by the pepper spray at first but eventually came to a stop. Officer Harris reholstered his pepper spray so that he could handcuff the defendant, but before he could, the victim tackled the defendant and knocked him to the ground. Officer Harris jumped on the defendant's back and placed handcuffs on him.

As he was handcuffing the defendant, he noticed blood on the victim's shirt. When he looked at the victim's face, he saw that it had been cut and had a "gaping wound" on the left cheek. He immediately began to administer first aid to the victim. Remembering that he had seen the defendant drop something, Officer Harris returned to the area where the defendant first struck the victim to look for a weapon. He found a green box cutter lying on the ground. It was the same color and shape as the object he previously thought was a cigarette lighter.

## ANALYSIS

I. Sufficiency of Evidence

The defendant contests the sufficiency of the evidence to support his convictions for theft of property with a value of over $500.00, evading arrest, and criminal simulation. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the prevailing party the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. State v. Tuggle, 639 6S.W.2d 913, 914 (Tenn. 1982). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

A. Theft of Property

The defendant alleges there is insufficient evidence to establish that he exercised control over Dillard's merchandise without the owner's effective consent because he never attempted to leave the store with the merchandise. We disagree.

The State was required to prove that the defendant, "with intent to deprive the owner of property, . . . knowingly obtain[ed] or exercise[d] control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Theft of property is a Class E felony if the property is valued over $500.00, but less than $1,000.00. Tenn. Code Ann. § 39-14-105. The proof at trial revealed that Detective Bright observed the defendant take a jacket from the rack and conceal it under a plastic bag similar to those used by dry cleaning establishments. Additionally, the defendant was carrying another opaque plastic bag which appeared to have merchandise inside of it. When Detective Bright confronted the defendant, the defendant threw the bags on the floor and ran out of the store. A search of the two bags revealed store merchandise worth $630.00, which had not been purchased.

According to the defendant, his control over the merchandise while inside the store was with the owner's consent. He argues that by opening its doors for business, "Dillard's effectively consents to the public exercising some control over the merchandise." Moreover, "should a patron inappropriately handle the merchandise," consent must be expressly revoked. In addition, the defendant points out that he could have been, but was not, indicted under Tennessee Code Annotated section 39-14-146(a), which provides that "a person commits theft of property if such person, with the intent to deprive a merchant of the stated price . . . conceals the merchandise . . . ." Based upon our review of the record, however, we conclude that there is sufficient evidence that the defendant committed theft of property as indicted.

Viewing the evidence in the light most favorable to the State, the defendant's intent to deprive the owner, Dillard's, of the merchandise was established by evidence that the defendant

concealed merchandise, which he had not purchased, in plastic shopping bags and claimed that he had a receipt for the merchandise when confronted by security personnel. Such evidence was also sufficient to establish that the defendant exercised control over the merchandise without the owner's consent. Furthermore, the defendant's flight from Detective Bright is additional evidence of his guilt. Were we to accept the defendant's argument, a patron could conceal merchandise under his or her own clothing and walk around inside the store with the owner's consent. Common sense dictates that a retail store's effective consent to handle merchandise does not extend to concealing merchandise for the purpose of stealing it. The defendant committed theft of property the moment he exercised control over the merchandise by concealing it in the two plastic bags with the intent to deprive the owner of it. This issue is without merit.

### B. Evading Arrest

The defendant contends that there is insufficient evidence to establish that he evaded arrest from Detective Bright because, at the time the defendant fled, Detective Bright did not have probable cause to arrest him, and he did not know that Detective Bright was attempting to arrest him. We disagree. Tennessee Code Annotated section 39-16-603(a)(1) states that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) Knows the officer is attempting to arrest the person; or (B) Has been arrested." However, it is a defense that the attempted arrest was unlawful. Tenn. Code Ann. § 39-16-603(a)(2). Officer Bright testified at trial that he observed the defendant take merchandise from the rack and conceal it in a bag that he was carrying. Detective Bright approached the defendant and informed him that he was a police officer. When Detective Bright asked the defendant if he had a receipt for the merchandise he was carrying, the defendant indicated that he did and put his hands in his pockets. Detective Bright asked the defendant to remove his hands from his pockets and to accompany Detective Bright to the security office. The defendant responded by grabbing the merchandise, throwing it towards Detective Bright, and then running out of the store. As he ran from the store, Detective Bright ordered the defendant to stop and then ran after him. However, the defendant continued to run from Detective Bright until apprehended forcibly by Officer Harris and Mr. Saunders.

Contrary to the defendant's assertion, Detective Bright had probable cause to arrest the defendant before he fled because Detective Bright had direct evidence that the defendant was concealing merchandise which he had not purchased. Detective Bright observed the defendant take merchandise off the rack and conceal it. When questioned by Detective Bright, the defendant indicated that he had a receipt for the merchandise. However, Detective Bright's testimony revealed that he observed the defendant continuously from the time the defendant concealed the merchandise until Detective Bright confronted him about it. Therefore, Detective Bright knew that the defendant did not have a receipt for the merchandise which he observed the defendant conceal. In fact, Detective Bright testified that he knew "what was going on" and that he "had probable cause to detain and question [the defendant] about the merchandise."

There is also sufficient evidence to establish that the defendant knew that Detective Bright was attempting to arrest him. Detective Bright informed the defendant that he was a

police officer and asked the defendant to remove his hands from his pockets and accompany Detective Bright to the security office. The defendant immediately fled, ignored Detective Bright's instructions to stop, and continued to run from Detective Bright until he was apprehended by another officer. This issue is without merit.

### C. Criminal Simulation

The defendant alleges that there is insufficient evidence to support his conviction for criminal simulation. Specifically, the defendant asserts that the offense of criminal simulation is not intended to prohibit individuals from disguising his or her identity but rather is a quasi-theft offense intended to "prohibit individuals from reaping undue financial gain through the use of counterfeit objects." The defendant argues, therefore, that his conduct did not establish the essential elements of criminal simulation. Here, we agree.

The indictments for criminal simulation alleged that the defendant intentionally possessed a driver's license and social security card, "which had been made or altered so as to appear to have value and authenticity based on source that it does not have, with the intent to sell, pass, or utter the object and thereby defraud or harm the State of Tennessee and the government of Davidson County." The defendant was convicted of two separate offenses: one for possession of the driver's license and one for possession of the social security card. Upon motion by the defendant, the trial court merged the two convictions.

The criminal simulation statute provides, in relevant part,
> (a) A person commits an offense of criminal simulation who:
> > (1) With intent to defraud or harm another:
> > > (A) Makes or alters an object, in whole or in part, so that it appears to have value because of age, antiquity, rarity, source, or authorship that it does not have;
> > > (B) Possesses an object so made or altered, with intent to sell, pass, or otherwise utter it; or
> > > (C) Authenticates or certifies an object so made or altered as genuine or as different from what it is[.]

Tenn. Code Ann. § 39-14-115. In addition, subpart (c) of the statute provides that the offense "is punishable as theft pursuant to § 39-14-105, but in no event shall criminal simulation be less than a Class E felony." Tenn. Code Ann. § 39-14-115(c).

The evidence presented in support of the criminal simulation charges consisted of testimony by Detective Bright and admission of the driver's license and social security card. Detective Bright testified that he conducted a search of the defendant's person incident to his arrest and found what appeared to be a Tennessee driver's license and a social security card in the defendant's billfold. Both documents bore the name Wayman Cochran, and the driver's license picture was the defendant. Detective Bright testified that he quickly discerned that the documents were not authentic. When Detective Bright asked the defendant his name, the defendant said, "You have it." Detective Bright then told the defendant, "If you're lying to me,

tell me if this is you or this isn't you. That's criminal impersonation." According to Detective Bright, the defendant replied, "That's me."

According to the defendant, his conduct clearly supports a conviction for criminal impersonation, a Class B misdemeanor, but does not support a conviction for criminal simulation, a minimum Class E felony. We first note that the criminal simulation statute is codified as an "offense against property." In contrast, the criminal impersonation statute is codified as an "offense against administration of government" and provides: "(a) A person commits criminal impersonation who, with the intent to injure or defraud another person: (1) assumes a false identity[.]" Tenn. Code Ann. § 39-16-301. Similarly, Tennessee Code Annotated section 39-16-303 prohibits using a false identification "for the purpose of obtaining goods, services, or privileges to which [a] person is not otherwise entitled or eligible[.]" Using a false identification is a Class C misdemeanor.

The offense of criminal simulation is not applicable to the facts of this case because the false identifications possessed by the defendant do not have the type of value contemplated by the statute. See State v. Odom, 64 S.W.3d 370 (Tenn. Crim. App. 2001) (criminal simulation conviction based upon possession of a check which had been altered to appear to have a value of $250,000.00); State v. Grigsby, No. E2000-00924-CCA-R3-CD,2001 Tenn. Crim. App. LEXIS 579 (Tenn. Crim. App. at Knoxville, January 25, 2001) (criminal simulation conviction based on defendant's possession of counterfeit sunglasses, bags, and heat transfer logos); State v. McConnell, NO. 03C01-9604-CC-00148, 1998 Tenn. Crim. App. LEXIS 238 (Tenn. Crim. App. at Knoxville, February 24, 1998) (criminal simulation conviction based on defendant's possession of $630.00 in counterfeit money). While we acknowledge that the defendant clearly intended to defraud Detective Bright by indicating that the identifications were authentic, this conduct is specifically addressed in the criminal impersonation statute. Tenn. Code Ann. § 39-16-301; See State v. Brooks, 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995) (holding that defendant's intentional misrepresentation of his identity to police officers is sufficient to establish criminal impersonation). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). We conclude that to construe the criminal simulation statute to include conduct, which is expressly codified elsewhere in our criminal code, would unduly expand its coverage beyond its intended scope, which is to prohibit theft by fraudulently passing counterfeit objects. The defendant's conviction for criminal simulation is reversed and dismissed.

II. Motion to Suppress

After Detective Bright testified, the defendant made a motion to suppress his statements to Detective Bright concerning his identity, alleging that the statements violated his Miranda rights. We first note that the defendant's motion was untimely pursuant to Rule 12(b)(3) of the Tennessee Rules of Criminal Procedure, which requires that a "motion to suppress evidence" be raised prior to trial. State v. Davidson, 606 S.W.2d 293, 295 (Tenn. Crim. App. 1980). "Prior to trial" means sometime earlier than the day of the trial. State v. Hamilton, 628 S.W.2d 742, 744 (Tenn. Crim. App. 1981); Tenn. R. Crim. P. 12, n.3. The failure to pursue a motion to suppress

"prior to trial" constitutes waiver unless good cause is shown for the failure to move for suppression in a timely manner. Tenn. R. Crim. P. 12(f); Hamilton, 628 S.W.2d at 744; Davidson, 606 S.W.2d at 295.

The defendant alleges that his motion should not be treated as waived because his failure to file the motion in a timely fashion was due to the State's failure to disclose the statement to the defense, despite his discovery request. We agree. The defendant filed a discovery request seeking "the substance of any oral statements made by the defendant and intended to be used as evidence in [the State's] case-in-chief . . . ." The State's written response to the request was "none known at this time." Rule 12(d) expressly requires the State to, when requested by the defendant, give notice of its intention to use evidence at trial in order to "afford [the defendant] an opportunity to move to suppress evidence under subdivision (b)(3) of this rule." Tenn. R. Crim. P. 12(d)(1). Because the State failed to disclose its intention to use the defendant's statement as substantive evidence of the criminal simulation charge, the defendant was prevented from filing a motion to suppress the statement prior to trial. Accordingly, Rule 12(d) does not bar our consideration of this issue.

The defendant alleges that his statements to Detective Bright concerning his identity should be suppressed because they were elicited during custodial interrogation prior to the defendant being advised of his Miranda rights. Detective Bright's testimony revealed that after the defendant was handcuffed and arrested by Officer Harris, Detective Bright searched the defendant's person and found a driver's license and social security card bearing the name of Wayman Cochran. Detective Bright quickly realized that the identifications were false and asked the defendant his name. The defendant would not answer directly, despite Detective Bright's repeated requests for his name. Instead, the defendant said "you have my identification," and "you have it," and "you tell me." Detective Bright then told the defendant, "If you're lying to me, tell me if this is you or this isn't you. That's criminal impersonation." At that point, the defendant finally replied, "That's me." Detective Bright admitted that the defendant was not advised of his Miranda rights prior to the conversation about his identity.

The Fifth Amendment protection against self-incrimination "privileges a person not to answer official questions put to him in any proceeding, civil or criminal, where the answers might incriminate him in future criminal proceedings." Minnesota v. Murphy, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141, 79 L. Ed. 2d 409 (1984). In fact, the statements of an accused made during the course of custodial interrogation are inadmissible as evidence unless the State establishes that the accused was advised of certain constitutional rights, commonly referred to as Miranda rights, and waived those rights. State v. Anderson, 937 S.W.2d 851, 853 (Tenn. 1996).

The instant defendant was unquestionably in custody at the time the challenged statements were made to Detective Bright. He had been handcuffed and searched incident to his arrest by Officer Harris. Therefore, we must determine whether the defendant was subjected to interrogation while he was in custody. The United Stated Supreme Court has recognized a routine booking exception to the Miranda requirement, "which exempts from Miranda's coverage questions to secure the 'biographical data necessary to complete booking or pretrial services.'" Pennsylvania v. Muniz, 496 U.S. 582, 601, 110 S. Ct. 2638, 2650, 110 L. Ed. 2d 528,

-10-

552 (1990) (citing the brief for the United States as Amicus Curiae, quoting U.S. v. Horton, 873 F.2d 180, 181 n.2 (8th Cir. 1989)). However, the exception only applies where the questions were not designed to elicit incriminating information. Muniz, 496 U.S. at 602 n14.

We note that there was no contemporaneous objection to Detective Bright's testimony during direct examination. We further note that the challenged testimony came in response to defense counsel's question during cross-examination, and, again, there was no objection. The objection was not raised until after the completion of the officer's testimony, after his excusal as a witness, and after a recess. See State v. Leach, 684 S.W.2d 655, 658 (Tenn. Crim. App. 1984) (requiring a contemporaneous objection to challenged testimony; objection coming after the witness's testimony deemed too late).

On these merits, the admissibility of this evidence presents a very close question. Regardless, even if the issue is not waived and even if the trial court erred in allowing admission of the evidence, the error would have no effect in this appeal. We have already concluded the defendant was erroneously convicted of criminal simulation. Accordingly, defendant has secured appropriate relief.

III. Admissibility of Merchandise List

The defendant asserts that Detective Bright was erroneously permitted to read the list he prepared containing a description of the merchandise in the defendant's possession and the price of each item. Specifically, the defendant asserts that the contents of the list are hearsay and do not fall under any of the recognized hearsay exceptions.

We are unable to determine from the record that the testimony of Detective Bright included hearsay evidence. In our view, the information in the list, including the prices stated on the price tags, would not have been hearsay had the witness merely testified to this information from his personal recollection of handling the merchandise contained in the defendant's bags. As such, he would have been testifying to information he personally perceived. Thus, we conclude that the *information* imparted during Detective Bright's testimony was not innately hearsay. We note that the list itself was not admitted into evidence, and we are unable to discern from the record that he simply read from the list during his testimony.

Accordingly, we must determine whether the witness's reference to the list, as opposed to testifying from his memory of a first-hand perception, created a hearsay problem. Had he injected the list into the trial through his testimony, we would likely find that it was hearsay - a "statement, other than one made by the declarant while testifying at the trial . . . , offered in evidence to prove the truth of the matter asserted." See Tenn. R. Evid. 801(c) (definition of hearsay); Id. 802 (declaring hearsay inadmissible except as provided in the rules of evidence); Id. 803(5) (providing an exception to the rule of inadmissibility of hearsay evidence when the evidence is "a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly"). However, from our review of the

record, we conclude that the *list* was not itself evidence. The witness was asked to describe the items taken from the defendant, and the witness apparently complied. We see no indication that he was reading the list into evidence, and neither party offered the list as an exhibit to the witness's testimony. See id. 803(5) (memorandum must be offered by the adverse party to be received as an exhibit). Thus, we conclude that the list was not "offered in evidence" and, therefore, was not hearsay.

Consequently, we discern that the issue presented by the defendant is not a hearsay issue but merely a witness's use of "a writing while testifying to refresh memory for the purpose of testifying." Id. 612. A Rule 612 use of a writing does not raise hearsay concerns. State v. Stanley Lawson, No. 01C01-9607-CR-00320, 1997 Tenn. Crim. App. LEXIS 1068, at *20 (Tenn. Crim. App., Nashville, Oct. 24, 1997). The advisory commission comments to Rule 612 state, "Only if a witness's memory requires refreshing should a writing be used by the witness." See Tenn. R. Evid. 612, advisory comm'n comments. "The direct examiner should lay a foundation for necessity, show the witness the writing, take back the writing, and ask the witness to testify from refreshed memory." Id. Rule 612.

> does not prescribe who must author the writing or the source of the writing. Rule 612 applies to any writing used to refresh a witness's memory, irrespective of who prepared the writing, when it was prepared, or whether the witness has ever seen the writing until the moment of testimony. The writing used to refresh memory need not be admissible and the best evidence rule, Rule 1002, is inapplicable.

State v. Price, 46 S.W.3d 785, 813-14 (Tenn. Crim. App. 2000) (quoting Neil P. Cohen, et al, Tennessee Law of Evidence § 612.2 at 402 (3d ed. 1995)).

In the present case, the trial court erred in applying Rule 612.[1] The State failed to establish the witness's need to refresh his memory, and the prosecutor did not "take back" the list before allowing the witness to testify with refreshed memory. See Price, 46 S.W.3d at 814; State v. Dishman, 915 S.W.2d 458, 461 (Tenn. Crim. App. 1995).

Nevertheless, we conclude that the error was harmless. See Tenn. R. Crim. P. 52(a); Price, 46 S.W.3d at 814; State v. Ronald Mitchell, No.0201-9702-CC-00070, slip op. at 10 (Tenn. Crim. App. Jackson, Sept. 1997); Dishman, 915 S.W.2d at 461. The information on the list, especially the price information, was detailed enough that a need to refresh the witness's recollection was probable, yet, the list was short, and a brief reference to the list could have easily prompted the witness to testify without further reference to the list. Moreover, had the trial court sustained a Rule 612 objection, the State could have elected to admit the list into evidence pursuant to the hearsay exception set forth in Evidence Rule 803(5). We believe it could have easily met the admission requirement; the proof shows that the list was prepared by the witness when "the matter was fresh in the witness's memory." Thus, even though the price

---

[1] We assume from the tenor of the defendant's objection that he raised a Rule 612 issue and that, because the list was apparently never read nor introduced into evidence, the trial court proceeded under Rule 612.

information may have been instrumental in establishing the value of the stolen items, we do not believe that the trial court's error affected the result of the trial.

IV. Sentence

A. Length of Sentence

The defendant was sentenced as a Range II multiple offender to the maximum sentence in the range for each of his convictions, ordered to be served consecutively. He asserts that the trial court misapplied one or more enhancement factors for each conviction and failed to apply a mitigating factor. However, the defendant concedes that at least two enhancement factors were properly applied to each conviction. Notwithstanding, he argues that his sentences were excessive. We disagree.

When there is a challenge to the length or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In conducting a de novo review of a sentence, this Court must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Based upon our review of the record, we conclude that the trial court improperly applied enhancement factors based upon findings not supported by the evidence. Therefore, we will conduct a de novo review of each sentence with no presumption of correctness.

1. *Theft of Property Sentence*

The defendant was sentenced to four years as a Range II multiple offender for the theft of property conviction. Theft of property with a value over five-hundred $500.00, but less than $1,000.00, is a Class E felony. The presumptive sentence for a Class E felony is the minimum in the applicable range, which is two years for a Range II offender. Tenn. Code Ann. § 40-35-210(c). If enhancement or mitigating factors exist, a trial court should start at the presumptive sentence, enhance the sentence within the range for enhancement factors, and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e).

In sentencing the instant defendant to four years, the maximum in the applicable range, the trial court applied four enhancement factors and no mitigating factors. The defendant does not challenge the trial court's application of enhancement factor (1), the defendant has a previous history of criminal convictions and behavior; (9), the defendant possessed or employed a deadly weapon; and (13), the defendant committed a felony while on probation. Tenn. Code Ann. §§ 40-35-114(1), (9), (13). However, the defendant does challenge the application of enhancement factor (2), the defendant was a leader in an offense involving more than one actor. Specifically, the defendant contends that there was no evidence that he was a leader in the offense. We agree.

The trial court found that "it is obvious from [the defendant's] actions that he . . . was a leader, and he was not going to obey the authority of the security guards to come forward, and he on his own chose to run during the commission of the offense." In the instant case, we fail to see how the defendant's failure to obey authority and flight from the store is pertinent to the determination of whether he was a leader. Although Detective Bright testified that he believed the defendant and Mr. Lark were together based on his observations, the record does not contain any evidence about the defendant's actions in the preparation for or during the commission of the offense that demonstrates that he was a leader in any way. In fact, there is insufficient evidence to establish that the defendant and Mr. Lark were acting in concert to commit one crime. Therefore, the trial court erred when it applied enhancement factor (2). However, because the trial court's application of the three remaining enhancement factors are supported by the record and should be given great weight, we affirm the imposition of the maximum sentence of four years for the theft of property.

2. *Aggravated Assault Sentence*

The defendant was sentenced to ten years as a Range II multiple offender for the aggravated assault conviction. Aggravated assault is a Class C felony and carries a sentence range of six to ten years for a Range II offender. Tenn. Code Ann. §§ 40-35-118; -112(b)(3). The presumptive sentence for a Class C felony is the minimum in the applicable range. Tenn. Code Ann. § 40-35-210(c). The trial court enhanced the defendant's sentence to ten years by applying four enhancement factors and no mitigating factors.

The defendant does not challenge the trial court's application of enhancement factor (1), the defendant has a previous history of criminal convictions and behavior; and (13) the felony was committed while the defendant was on probation. Tenn. Code Ann. §§ 40-35-114(1); (13). However, he argues that the trial court erred by applying factor (6), the personal injuries inflicted upon the victim were particularly great; and (10), the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. §§ 40-35-114(6); (10).

With respect to factor (6), the defendant asserts that there is insufficient evidence to establish that the victim's injuries were "particularly great." We agree. The trial court found that the victim was "permanently scarred," required "possibly 142 stitches," suffered "nerve damage in his cheek and [is] unable to smile like he did prior to the injury." Our review of the record reveals that the victim was the only witness to testify about the extent of his injury. The

-14-

victim testified that he had a large laceration on his left cheek and had a few small lacerations on his chest. He indicated that he did not feel the cut when it was made or suffer any pain from it, but did require around one hundred stitches altogether. He also testified that although he has to shave to see it, there is a scar on his cheek which does not cause him any residual pain. The record is devoid of any evidence that the victim has any type of nerve damage as a result of the injury.

Based on the victim's testimony, we conclude that factor (6) was erroneously applied to enhance the defendant's conviction. Proof of serious bodily injury will always constitute proof of particularly great injury. State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). "Serious bodily injury" means bodily injury which involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. Id. Although the victim did testify that he has a scar on his cheek as a result of the injury inflicted by the defendant, there is no evidence of "protracted or obvious disfigurement." See State v. Barnes, 954 S.W.2d 760, 763 (Tenn. Crim. App. 1997) (holding that evidence of the existence of a scar while establishing disfigurement does not establish obvious or protracted disfigurement). In fact, it appears from his testimony that he wears a beard on the area where the scar is located and would have to shave his face in order for the scar to be visible.

The defendant also asserts that the trial court erred by applying enhancement factor (10), because it is an element of aggravated assault. We agree. The defendant was indicted and convicted of aggravated assault by use of a deadly weapon. This Court has previously held that whenever an offense is committed with a deadly weapon, it is inherent within the offense that there was a high risk to human life. State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994); Tenn. Code Ann. § 40-35-114(10). Thus, enhancement factor (10) is inapplicable to the present offense. State v. Claybrooks, 910 S.W.2d 868, 872-73 (Tenn. Crim. App. 1994); Hill, 885 S.W.2d at 363; State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993).

In sum, the trial court properly applied enhancement factors (1) and (13) but misapplied factors (6) and (10) to the aggravated assault conviction. However, we do not conclude that a reduction in the defendant's sentence is required, because we place great weight on the defendant's lengthy history of criminal conduct and the fact that he was on probation at the time the offense was committed.

### 3. *Misdemeanor Sentences*

The defendant was sentenced to eleven months and twenty-nine days at seventy-five percent for the evading arrest and possession of drug paraphernalia convictions, both of which are misdemeanors. Initially, we note that the trial court has more flexibility in misdemeanor sentencing than in felony sentencing. State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998). For example, unlike the procedure for felony sentencing, a misdemeanant is not entitled to a presumption of the minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Furthermore, although the trial court must apply the enhancing and mitigating factors in calculating the percentage of the sentence to be served in confinement, it need not place findings

of fact on the record. Rather, the court must only avoid arbitrarily imposing incarceration. Tenn. Code Ann. § 40-35-302; Troutman, 979 S.W.2d at 273-74.

The record reflects that the trial court applied enhancement factors (1), (9), and (13) to both of the misdemeanor convictions. Although we agree with the defendant that factor (13) is inapplicable to misdemeanor convictions because the plain language of the statute refers only to a felony committed while on probation, we conclude that the remaining enhancement factors are sufficient to justify the sentence.

In sum, we hold that the trial court correctly applied enhancement factors (1), (9), and (13), but misapplied enhancement factor (2) to the theft conviction. The trial court correctly applied enhancement factors (1) and (13), but misapplied factors (6) and (10) to the aggravated assault conviction. The trial court correctly applied enhancement factors (1) and (9) to the defendant's convictions for evading arrest and possession of drug paraphernalia, but misapplied factor (13). In addition, the defendant argues that for all of the convictions except aggravated assault, the trial court erred by refusing to consider in mitigation that the defendant's conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). Based upon our de novo review, we conclude that mitigating factor (1), that the defendant neither caused nor threatened serious bodily injury, applies to almost every crime that is not classified as an offense against persons. Therefore, if applicable, this factor would be entitled to little weight.

In affirming the sentences imposed by the trial court, we recognize that the mere number of enhancement and mitigating factors is not relevant. Instead, "the important consideration [is] the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct." State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). In the instant case, we conclude that the applicable enhancement factors so "firmly embedded the sentence[s] in the ceiling" that the sentences imposed were appropriate notwithstanding the presence of any mitigating factors. State v. Braden, No. 01C01-9610-CC-00457, 1998 Tenn. Crim. App. LEXIS 213, 1998 WL 85285, at *7 (Tenn. Crim. App. Feb. 18, 1998).

B. Consecutive Sentences

The defendant asserts that the trial court erred by ordering his sentences to be served consecutively. We disagree. The same standard of review applies whether there is a challenge to the length of a sentence or to the manner of service of a sentence. Tenn. Code Ann. § 40-35-401(d). The trial court imposed consecutive sentences based on a finding that the defendant is "a persistent and dangerous offender who has little or no regard for human life . . . and that he committed the offense while on probation."

Tennessee Code Annotated section 40-35-115 states that the trial court may impose consecutive sentences upon a defendant convicted of multiple criminal offenses if it finds by a preponderance of the evidence that the defendant falls into one of seven categories. A trial court may impose consecutive sentences if the "defendant is sentenced for an offense while on

probation." Tenn. Code Ann. § 40-35-115(b)(6). A court may also impose consecutive sentences if the defendant "is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). However, before a defendant may be sentenced as a "dangerous" offender, the trial court must find that the "terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). Furthermore, the length of the sentence, when consecutive in nature, must always be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2). State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

Although the trial court did not make the required findings for consecutive sentencing based on the dangerous offender status, we conclude that consecutive sentencing was appropriate based solely on the defendant's probation status. Only one of the factors enumerated in Tennessee Code Annotated section 40-35-115(b) need be proven to support a consecutive sentence. Because there is ample evidence to establish that the defendant was on probation at the time the instant offenses were committed, consecutive sentencing was appropriate. Tenn. Code Ann. § 40-35-115(b)(6).

## CONCLUSION

Based upon our review of the record, we conclude that there is sufficient evidence to support the defendant's convictions of theft of property and evading arrest. However, we conclude that the defendant was erroneously indicted for criminal simulation, a Class E felony, rather than criminal impersonation, a Class B misdemeanor. Because there is insufficient evidence to establish all of the essential elements, we reverse and dismiss the defendant's conviction of criminal simulation. As a result, we need not determine the defendant's claim regarding the trial court's failure to instruct the jury on the offense of attempted criminal simulation or the alleged error in admitting the defendant's pre-Miranda statements to Detective Bright about his identity. We conclude that Detective Bright's inventory list of stolen merchandise was improperly used under Tennessee Rule of Evidence 612 because the proper foundation had not been laid but that the error was nevertheless harmless. Based upon our de novo review of the defendant's sentences, we conclude that the trial court correctly applied enhancement factors (1), (9), and (13), but misapplied enhancement factor (2) to the theft conviction. The trial court correctly applied enhancement factors (1) and (13), but misapplied factors (6) and (10) to the aggravated assault conviction. The trial court also correctly applied enhancement factors (1) and (9) to the defendant's convictions for evading arrest and possession of drug paraphernalia, but misapplied factor (13). Notwithstanding the misapplication of enhancement factors, we conclude that the length of the sentences imposed by the trial court were not excessive given the great weight of the applicable enhancement factors. Furthermore, the trial court did not err by ordering that the defendant's sentences be served consecutively.

Accordingly, we affirm the convictions for theft of property over $500.00 in value, aggravated assault, evading arrest, and possession of drug paraphernalia. We further affirm the

sentences of four years for theft, ten years for aggravated assault, eleven months and twenty-nine days for evading arrest, and eleven months and twenty-nine days for possession of drug paraphernalia, all to run consecutively, for a total effective sentence of fifteen years, eleven months and twenty-eight days.

_____
JOHN EVERETT WILLIAMS, JUDGE