**STATE of Tennessee, Appellee,**

v.

**John Ray DAVIDSON, Appellant.**

Court of Criminal Appeals of Tennessee.

July 3, 1980.

Permission to Appeal Denied by Supreme Court Sept. 15, 1980.

Brett B. Stein, Louis P. Chiozza, Jr., Sam J. Catanzaro, Jr., Memphis, for appellant.

William M. Leech, Jr., State's Atty. Gen., Nashville, Robert A. Grunow, Senior Asst. State's Atty. Gen., Nashville, James D. Wilson, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of armed robbery and sentenced to ten (10) years. He was also found to be an habitual criminal and was sentenced to life imprisonment.

The defendant says a "wad of bills" should not have been introduced because they were found as a result of a search and seizure arising from an illegal arrest, says as a result of this illegal search the police were led to a jacket worn during the robbery from which keys to a vehicle used by the robber were seized and was thus tainted, says the in court identification was impermissibly tainted by virtue of two out–of–court lineups said to be unduly suggestive, says a pistol should not have been introduced into evidence, attacks the sufficiency of the evidence, and says the trial court did not instruct the jury on the character of witnesses and the number of witnesses.

The judgment is affirmed.

On February 17, 1978, at approximately 2:00 a. m., three men came into Coleman's Barbeque on Winchester Road in Shelby County and got coffee to go at a self–service counter. One of the men came to the counter ostensibly to pay for the coffee. Laura Jean Foster, the sole employee of the business at the time, was standing at the counter. When the man confronted Foster, he exhibited a pistol and demanded he be given the money from the cash register.

Foster gave the man the money and, at his direction, went into a back room. When the man left Foster called out, and Stanley William Ray, who was playing a pinball

machine when the robbery took place, went to her assistance.[1]

Ray had seen the three men enter the business and identified the defendant as one of the three. Foster identified the defendant as being the man who held the pistol on her and took the money. Ray, also, described a car which the three men arrived in and in which they apparently left.

When the police arrived, Foster and Ray gave a description of the robbers to them. One of the robbers was particularly noticeable because he had long blond hair which had been bleached. He was described as wearing a brown jacket and being very neat. Foster said she had seen the defendant in the business on approximately three other occasions. In addition, Ray described the automobile in which he had seen the defendant and the others arrive. He said it was a dark blue Comet or Maverick with the left headlight out.

While the police were at the place of the robbery discussing the robbers' description with Foster and Ray, Paul Dewayne Neldon came in and overheard the description of one of the robbers as having bleached blond shoulder length hair. Neldon had just come from a place called the Underground Lounge. He informed the officers he had seen a person fitting that description at the lounge.

Acting on this, officers went to the lounge and commenced a search for people matching the description of the robbers. The defendant was the only person in the lounge with shoulder length bleached blond hair. He was wearing a blue jacket. He was approached by one officer who patted him down and asked a few questions of him. The officer found nothing significant in the search and moved on. During this time, a vehicle matching the one described by Ray was found outside the lounge. Another officer received a tip from another customer[2] and returned to the lounge where he found a brown jacket on a chair

at a table next to where the defendant was sitting. In the pocket of the jacket was a key which fit the vehicle.

Another frisk of the defendant by another officer revealed a wad of bills in his pocket which contained seventy–seven dollars ($77.00).

An employee of the lounge delivered a .22 calibre pistol to the officer which had been found in a trash can.

The defendant contends the money seized from him, the jacket and keys to the vehicle, driven to and from the robbery, flowed from an improper stop and frisk and from an illegal arrest. He further contends the lineup at the lounge and at the station house flowed from an illegal arrest.

The defendant claims this was plain error which this Court should notice even though no pretrial motion to suppress the evidence was made as required by Rule 12(b), *T.R. Cr.P.*, and even though no objection was made to the introduction of the evidence, with the exception of an attack on the lineups, at trial.

This is not a situation which the court can recognize as plain error.

■ Motions to suppress evidence must be made prior to trial. Rule 12(b)(3), *T.R. Cr.P.* The failure to raise such defense or objection pretrial constitutes a waiver of the objection unless good cause for failure to raise the objection timely is shown. Rule 12(f), *T.R.Cr.P.* There is nothing advanced in this record to show why the motion to suppress was not made pretrial.

■ Had such objection been made pretrial or even during trial, the State would have been put to the task of showing "specific and articulable facts reasonably warranting the intrusion" [the stop and frisk and arrest], *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), *Hughes v. State*, 588 S.W.2d 296 (Tenn. 1979), and that the officer's action was justified.

1. Foster recalled opening the door to the room and coming out. Ray says he thought he unlocked the door and let Foster out.

2. This customer is unidentified in the record.

Although the record does not fully develop whether the officer had reasonable grounds for the intrusion and whether the State could show specific and articulable facts for the intrusion, the evidence at trial tends to show such existed. The failure of Defendant to make pretrial objections to the introduction of the evidence constitutes a waiver of any objections to this evidence. *See Feagins and Jonas v. State*, 596 S.W.2d 108 (Tenn.Cr.App.1979).

The defendant further contends the in-court identification of him should have been suppressed because, under the totality of the circumstances, the in-court identification was a direct result of unnecessary and unduly suggestive influence arising from the two pretrial lineups.

Rule 12, *T.R.Cr.P.*, is applicable to this type motion also.

In discussing the underlying rationale for Rule 12, *T.R.Cr.P.*, this Court in *Feagins, supra*, said:

"There are many valid reasons underlying the practice of requiring pre–trial motions. It avoids interrupting a trial in progress with auxiliary inquiries which break the continuity of the jury's attention and it avoids inconveniencing jurors and witnesses by requiring them to stand idly while the court hears a motion to suppress. The practice prevents mistrials from the jury's exposure to unconstitutional evidence. It is to the advantage of both the prosecution and defense to know prior to trial whether certain items will or will not be admitted into evidence. Granting the pre–trial motion might result in abandonment of the prosecution; if the pre–trial motion is denied, then the defendant may either plead guilty and gain whatever concession might be obtained from the State, or change his trial strategy.

Further, the consideration of a motion to suppress after the beginning of the trial can adversely affect the State's right to appeal an adverse ruling. When a pre–trial judgment is adverse to the State, the State's right to appeal is preserved." *Id.* at 110.

All of these reasons applicable to the motion to suppress evidence in *Feagins* are applicable to an attack upon identification.

In *United States v. Cranson*, 453 F.2d 123 (4th Cir. 1971), cert. denied 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972), the Court said a motion to suppress in–court identification, to be timely, must be filed pretrial unless the defendant could show cause why such motion was not thus filed, in which event the trial court could entertain the motion after commencement of the trial.

In *Solomon v. United States*, 408 F.2d 1306 (D.C.Cir.1969), the Court said the "proper way to raise a *Wade* [*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] objection is by a motion to suppress identification testimony before trial ..." The Court went on to say "a distinctly second-best procedure is a defense motion to suppress during trial."

Neither of these cases decided a failure to raise the motion to suppress pretrial foreclosed the consideration of such motion by the Courts. In *Solomon* the Court considered the issue "reluctant[ly]," though raised for the first time on appeal. The reason the D. C. Circuit considered the issue was because improper identification may violate constitutional rights and the difficulty of holding such a violation to be not substantial.

■ In summary, we consider a motion to suppress in--court identification as a motion to suppress evidence, and it is controlled by Rule 12, *T.R.Cr.P.*, and should be made pretrial. In the event such is not made, the trial court is not required to conduct an out--of -jury–hearing during trial unless counsel can show by specificity in his motion to suppress the identification a substantial likelihood of a constitutional violation. In other words, a general objection would require no hearing. Or, as said in *Cranson, supra*,

"Not only must the motion for an evidentiary hearing be timely, but it should be supported by sufficient 'solidity'–to justify the holding of such hearing." (citations omitted) *Id.* at 126.

Citing and quoting from *Cohen v. United States*, 378 F.2d 751 (9th Cir. 1967), cert. denied 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967), the *Cranson* Court said:

> ". . . it is often stated that the supporting claim for an evidentiary hearing on a motion to suppress must be sufficiently definite, specific, detailed and nonconjectural, to enable the Court to conclude a substantial claim was presented." *Id.* at 126.

This applies equally to the requirement of a pretrial motion. The reason for this is to prohibit the expenditure of court time in general exploratory probes to discover if there might be some possibility of a substantial claim. This rule should, however, apply more strictly to in–trial motions because the prevention of disruption of juries on issues that should be decided pretrial is the reason for Rule 12 of *T.R.Cr.P.*

With the broadened discovery rules we now have, the incidence of defense counsel not being aware of constitutionally impermissible lineups should be rare and compliance with Rule 12 on this type of suppression motions should be the rule rather than the exception.

Considering now the attack on the in-court identification on the basis of the lineups, we find the more the defendant attacks the lineup, the weaker the likelihood of impermissible suggestiveness becomes.

The defendant, a hairdresser, had unusual blond hair apparently artificially produced by some method. The person who committed the robbery had unusual blond hair and was wearing a brown jacket. The victim and another witness gave a description to the police officers at the scene which accurately described the defendant.

The defendant attacks the lineups on the basis no one with blond hair or wearing a brown jacket was placed in the lineup.[3]

The trial court conducted a jury–out hearing on the lineup issues and determined there was no constitutional infirmity.

The evidence shows the officers were unable to locate anyone with hair bleached the color of the defendant's. They did put some people with light colored hair into the lineup. They concede, however, none had hair as blond as the defendant's. The officer who set up the station house lineup testified in forming a lineup "We'll get as close as we can with what we've got."

In making the identification at the lounge lineup and the station house lineup, Foster identified the defendant and another of the individuals as two of the three involved in the robbery. There is nothing to suggest any unique appearance about that individual, which suggests her identification of the defendant was come by by impermissible suggestion. Further, Foster testified the defendant had been in the store before and she recognized him because of his hair and general neat appearance. Her description of the defendant to the police officer at the scene was a remarkably accurate account and was sufficient to cause a person who overheard her give the description to police to recall he had seen this person at the lounge.

In addition to Foster's testimony, Ray gave an accurate description of the defendant as being a person who was in the business at the time of the robbery. Additionally, Ray described a vehicle in which the three men were traveling. This vehicle was found at the lounge, and the evidence shows it was owned by the defendant.

■ Under the totality of the circumstances surrounding these lineups, we are not convinced they were so impermissibly suggestive as to give rise to a substantial likelihood of misidentification, *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and agree with the trial judge's ruling on this.

■ Beyond this, even if the lineups were to be invalid for the reasons raised, the opportunity of Foster to view the defendant at the time of the crime, her opportunity to

---

**3.** The defendant wore no brown jacket at the lounge lineup. The record does not reflect he

did so in the station house lineup.

see him in the business on prior occasions, and the accuracy of her description of the defendant to the officer immediately after the robbery removes any suggestion of a misidentification arising from the lineups. In addition, the accuracy of Ray's description of the individual present when the robbery occurred, his description of the automobile and the evidence connecting the defendant therewith gives reliability to the in-court identification. We conclude the in-court identification was, therefore, properly admitted.

 The defendant further complains about the introduction of a pistol into evidence without a proper chain of custody being established. No objection was made to this evidence when it was offered. Had such objection been made such a defect might well have been supplied or the trial court would have had the opportunity to exclude this evidence. This is not a matter of plain error and the failure to object precludes the defendant from relying on this as grounds for upsetting the verdict.

The defendant attacks the sufficiency of the evidence. The evidence is more than sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. Rule 13(e), *T.R.A.P.*

The attack upon the instruction because the trial judge struck a portion of the charge dealing with evidence of untruthful character is without merit. No such evidence was introduced and the court was not required to give such instruction.

The further objection to a failure to charge on weighing the quality of witnesses' testimony rather than the number is likewise without merit. The defendant did not testify and offered only one witness whose testimony was not helpful to the defendant. The charge would have been more damaging than beneficial to the defendant on the quality of witnesses' testimony. Additionally, the defendant did not object to the charge given or request additional instructions.

DUNCAN, J., and JOHN D. TEMPLETON, Special Judge, concur.