IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2005

## STATE OF TENNESSEE v. RAYMOND GRIGGS

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5320     Jon Kerry Blackwood, Judge**

---

**No. W2005-00198-CCA-R3-CD  - Filed April 17, 2006**

---

Following a search of his residence, Defendant, Raymond Griggs, was indicted on two counts. Count one charged possession of a schedule II controlled substance (cocaine) with intent to deliver .5 grams or more, and count two charged Defendant with being a convicted felon in possession of a handgun.  Prior to trial, Defendant filed a motion to suppress all evidence obtained as a result of the search warrant.  The trial court denied the motion.  A jury trial was held and Defendant was convicted of count two, convicted felon in possession of a handgun.  A mistrial was declared as to count one, presumably because the jury could not reach a unanimous verdict.  Defendant filed a motion for new trial which the trial court subsequently denied.  On appeal, Defendant argues that (1) the evidence presented at trial was insufficient as a matter of law to sustain the conviction of being a convicted felon in possession of a handgun, and (2) the trial court erred in failing to suppress the evidence obtained as a result of the search warrant.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Richard G. Rosser, Somerville, Tennessee (on appeal); Gary F. Antrican, District Public Defender; and Shana McCoy-Johnson, Assistant Public Defender (at trial), for the appellant, Raymond Griggs.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Proof at Suppression Hearing

George Allan Freeman, a narcotics investigator with the Fayette County Sheriff's Department, testified that on September 5, 2002, he executed a search warrant at Defendant's residence, 110

Griggs Way, Fayette County. The affidavit for the search warrant contained detailed directions to locate 110 Griggs Way, and the search warrant itself indicated the address to be searched. Officer Freeman said that he was familiar with the address because he had previously been involved in a case against Defendant wherein Defendant was charged with possession of a Schedule II drug with intent to deliver. Officer Freeman said that in his dealings with Defendant, he had not known Defendant to live at any address other than 110 Griggs Way. At the time of the arrest at issue, Defendant had personal property and possessions at the residence.

Officer Freeman stated that undercover officers had conducted "approximately five buys" of cocaine at Defendant's house. Defendant was present at the house during each of these buys. These buys provided the basis for obtaining the warrant to search Defendant's house. Defendant was not charged with a crime pursuant to any of these buys. At the time the warrant was executed, Defendant was alone inside the residence, and another individual was outside the residence. The officers found 14.7 grams of crack cocaine inside a hole in the "exterior wall of the front porch in a little covered porch area on the entrance to the house." The officers also found a loaded Glock, Model 23, 40 caliber, semi-automatic pistol and a day planner containing Defendant's personal information and two-thousand dollars in cash. The gun was found in a laundry hamper containing clean, folded clothes, underneath some of Defendant's jeans. Defendant told the officers that the pistol was in the laundry basket before they actually uncovered it. Defendant told the officers that the weapon belonged to a female who also lived in the house. A gun trace conducted on the pistol revealed that it was purchased by Catina Bonds. At trial, Ms. Bonds said it was purchased twenty-nine (29) days earlier.

Officer Freeman explained that the exterior of the house was "old, clabbered siding," and that he believed some of it had been taken off. It was his opinion that the insulation was "silver board insulation," which is essentially "a foam board that had holes throughout it that were knocked out with wall insulation behind them." There were several holes in the exterior of the home. Defendant requested that the officers leave the door open as they searched the porch, while he sat in a chair "directly through the front door" and looked at the porch. A drug dog from the Galloway Police Department alerted to the location of the drugs. As the officers removed the drugs from their hiding spot, Defendant "slumped over in his chair and . . . teared up a little bit." Defendant stated that "he had to sell drugs to make a living for his family" because no one would hire him due to his obesity.

On cross-examination, Officer Freeman stated that the drug buys which provided the basis for the search warrant were conducted by two different informants in the three weeks preceding September 5, 2002. The last buy occurred within seventy-two hours of obtaining the search warrant at issue. The money the informants used to purchase the drugs was photocopied so that the officers could track the money using the serial numbers. None of the photocopied money was found in the two thousand dollars taken from the day planner, nor was it found elsewhere in Defendant's residence.

Officer Freeman did not know if Defendant owned the residence. He thought the property belonged to Defendant's mother. He acknowledged that Catina Lashea Bonds also lived in the

house, as well as Defendant's mother. He admitted that at the time of the search, there was a man outside the residence, James Beasley, but he was unaware of Defendant's relationship to this man and denied any knowledge that Mr. Beasley was Defendant's uncle. A second man arrived during the search, and the officers handcuffed him and placed him in the house.

A marked patrol car with two uniformed deputies made the initial entry into Defendant's house. Officer Freeman had the search warrant and gave Defendant a copy. No drugs, weapons, money, or paraphernalia were found on Defendant's person. The officers searched the residence for approximately two hours, but did not recover any drugs. At this point, the drug dog from Galloway Police Department was brought to the residence to assist in the search. Officer Freeman stated that one of the informants indicated that the drugs were hidden on the front side of the house based on Defendant's behavior during the buys. The informant did not indicate that the drugs were in the exterior wall of the house.

## II. Trial

At trial, Jeff Barker of the Fayette County Sheriff's Department testified that he worked undercover in narcotics related cases. At the time of trial, he had worked in that capacity for approximately six months. Prior thereto he was a uniformed patrol deputy. On September 5, 2002, Officer Barker participated in the execution of a search warrant at Defendant's residence. He arrived at the scene with Deputy Vance in an unmarked patrol car. The unmarked patrol car was the only one arriving at the scene at that time. Al Freeman was the lead officer in charge of the search. Officer Barker's duty was to arrive at the residence, secure the safety of the house, and execute the search warrant. There was a man in the front yard who took off running as the officers approached. Deputy Vance apprehended the man as he was running away. On cross-examination, Officer Barker said that the man was an African-American male named James Beasley. Mr. Beasley told Officer Barker that he did not live at the residence. Officer Barker did not question anyone at the residence about whether this was true.

Officer Barker knocked on the door of the residence and announced the police presence. He waited five seconds before entering the house. The front door was open and when he received no response, he opened the storm door and proceeded into the house. He walked through the living room and found Defendant in one of the bedrooms. Defendant was sitting on the bed. He did not say anything to Officer Barker, he just put his hands up and was handcuffed immediately. At this point, Officer Freeman entered the room, gave Defendant a copy of the search warrant, and *Mirandized* him.

Officer Freeman asked Defendant if he had any weapons or contraband in the house. Defendant responded that he had a pistol and indicated that it was in his bedroom. He stated that the handgun belonged to his girlfriend. Deputy Vance retrieved the weapon from the bedroom. The officers searched the house for approximately an hour and a half without finding any drugs. They eventually called Galloway Police Department's canine unit. When the drug dog arrived, he alerted to an area on the front porch, indicating that he detected narcotics. Officer Freeman searched the

area where the dog had alerted. He found a hole in the wall and pulled out a bag containing a substance which resembled crack cocaine. Defendant was sitting in the living room observing the officers through the front door. Defendant stated that he could not find a job because he was obese, so he sold drugs to support his family.

Al Freeman identified himself as a narcotics investigator with the Fayette County Sheriff's Department. He has been at the Sheriff's Department for seven years and was the lead deputy for narcotics investigations in Fayette County at the time of trial. On September 5, 2002, Officer Freeman was operating in the capacity of narcotics officer for Fayette County Sheriff's Department when he executed a search warrant at Defendant's residence. The search warrant authorized a search of the premises, vehicles, persons, and outbuildings at Defendant's residence, 110 Griggs Way, Moscow, Tennessee. Defendant was present at the residence when Officer Freeman arrived to execute the warrant. Defendant's girlfriend and mother also resided at the residence, but neither of the women were present at the time of the search.

Officer Freeman corroborated Officer Barker's account of what took place prior to and during the search. He stated that he arrived at the residence around five o'clock p.m., "approximately 30 seconds" after Officer Barker. When he arrived, Officer Barker had already entered the residence and together they placed Mr. Griggs and Mr. Beasley in custody. Officer Freeman then gave Defendant a copy of the warrant and *Mirandized* him. He asked Defendant if he had any weapons or contraband in the house. Defendant indicated that there was a weapon in a clothes basket in the bedroom. Deputy Vance retrieved the gun, a Smith and Wesson, semi-automatic, 40 caliber, Glock, Model 2340 pistol. The gun was inside a Glock plastic box. It was loaded with ammunition, and there was an additional spare clip in the plastic box. A gun trace confirmed the pistol was purchased by Defendant's girlfriend, Catina Bonds. The gun was legally purchased twenty-nine (29) days prior to the search warrant. Defendant offered no explanation as to why the gun was with his clothing in his bedroom.

Officer Freeman explained that the house was large with numerous areas to search outside the residence. He said that after an hour and a half of searching, he decided to call the drug dog because the nature of crack cocaine makes it easy to hide and the drug dog would minimize the search time. Prior to the dog's arrival, the officers found a set of mechanical metallic hand scales in a vehicle in the front yard. They also found a day planner in Defendant's bedroom which contained about two-thousand dollars. Once the dog arrived, he alerted to an area of the porch near a freezer. The officers searched the area and eventually uncovered a sandwich baggie containing approximately half of an ounce of crack cocaine. When Officer Freeman confronted Defendant about the drugs, Defendant "immediately slumped in his chair and put his head between his legs and he was sobbing and he said something to the effect that he was obese . . . and he couldn't find a job and that [selling drugs] was the only way he could support his family." Officer Freeman said he did not specifically ask Defendant if he had any drugs on the exterior of the house.

Kay Sherriff testified that she was the Regional Crime Laboratory Supervisor for the Tennessee Bureau of Investigation (T.B.I.) crime laboratory in Memphis, as well as a Special Agent

Forensic Scientist specializing in drug identification. She has been employed by the T.B.I. for over fourteen years, and has a total of twenty-five years of experience in the field of chemistry. She explained that the T.B.I. crime lab analyzes evidence submitted by law enforcement officers. In her capacity with the T.B.I., Agent Sherriff acts as custodian of records at the crime laboratory. The recorded analysis of the drugs found at Defendant's residence indicated the substance was cocaine, a schedule II narcotic, in the amount of 14.7 grams. Agent Sherriff explained the process for testing and identifying the substance as cocaine, and the method for measuring the accuracy of these results.

Fannie Mae Griggs testified that her son, Defendant, and his girlfriend, Catina Bonds, lived with her in September 2002. Ms. Griggs' brother, John, also lived in the home at that time and stayed in a little room on the front of the house. She stated that on September 5, 2002, she came home and the police were searching her house. She was never shown a search warrant or given a copy of a search warrant.

On cross-examination, Ms. Griggs said that she did not know who the owned the drugs. She said that there were a lot people coming and going from the house when Defendant was living there. Defendant and his girlfriend have two children and those children were also living in the home at the time of the search. She said that she did not know there was a loaded gun in the house.

Catina Bonds testified that she was living at 110 Griggs Way in September 2002. She lived there with Raymond Griggs, Fannie Mae Griggs, Raymesha Griggs, Raymond Griggs, II, and John Griggs. John Griggs stayed in a little room on the porch. Ms. Bonds purchased a handgun in August or September of 2002. She purchased a 40 caliber Glock pistol because she was planning to get a job with Guardsmark, a security company. She purchased the gun at Guns and Ammo on Summer Avenue in Memphis. Ms. Bonds stored the gun in a closet, but on the day of the search it had been moved to the clothes hamper because she was cleaning out the closet. She said she was going to move the gun from the hamper before she left the house but she forgot.

Ms. Bonds identified the day planner found at the house as her "organizer." She said the organizer belonged to her, not Defendant. She said that the organizer was kept in her kids' drawer, which was the second or third drawer in the chest-of-drawers. The organizer contained two thousand dollars, all of which belonged to Ms. Bonds. She did not have any drugs hidden at the residence.

On cross-examination, Ms. Bonds said that she did not tell Defendant that she had taken the gun from the closet and put it in the hamper. She said that he probably knew where it was because it was in the hamper under his clothes. She placed the gun in the hamper before one o'clock p.m. Ms. Bonds was at work during the search, but she did not think Defendant would have claimed the organizer as his own since it had her name in it.

With respect to the gun, Ms. Bonds said that she bought the gun, purchased the bullets, and loaded the gun. She said that the gun had remained loaded since she purchased it. She said that she thought she had taken the clip out of the gun when she moved it, but she could not remember. She also could not remember whether she had left the gun with a bullet in the chamber.

On appeal, Defendant argues that the evidence presented at trial was insufficient to support a conviction for convicted felon in possession of a handgun. Specifically, he asserts that the State failed to present evidence to the jury that Defendant was a convicted felon. Without this material element of the offense, Defendant argues that the conviction cannot be upheld. He also argues that possession of a gun at one's house does not violate the statute prohibiting a felon from possessing a gun. He further argues that the statute is not violated when the convicted felon is in a house where there is a gun belonging to someone other than the convicted felon. Defendant next argues that the search warrant was defective and the trial court erred in failing to grant Defendant's motion to suppress evidence obtained pursuant to the search warrant. He argues that the search warrant was invalid because it did not specifically mention a "firearm" and other items to be seized in the search.

### III.  Sufficiency of the Evidence

In determining the sufficiency of the evidence, this court does not re-weigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

A.  Proof of Prior Conviction of Felony Drug Offense

Defendant was found guilty of being a convicted felon in possession of a handgun. Tennessee Code Annotated section 39-13-1307 states in pertinent part, "A person commits an offense who possesses a handgun and . . . [h]as been convicted of a felony drug offense." T.C.A. § 39-17-1307(b)(1)(A)-(B) (2003). As pointed out in the State's brief, for Defendant's conviction to be upheld, the State must prove the Defendant possessed a handgun, and that he was previously "convicted of a felony drug offense." *Id.*

As previously stated, Defendant challenges the sufficiency of the evidence by first arguing that the State failed to present the jury with evidence that he was a convicted felon, a necessary element of the offense. The State responds that "[t]here is no dispute that the defendant was convicted of intent to deliver schedule II (cocaine) controlled substance on December 16, 1999, in the circuit court of Fayette county docket No. 48055 (I. 3; II. 75). The sole issue is whether the defendant was in possession of the handgun." The State cites to two different portions of the record in support of its assertions.

The first citation to the record is to page 3 of Volume I, which is Count Two of the indictment, which states as follows:

COUNT TWO

And the Grand Jurors on their oath aforesaid further present that in Fayette County on or about September 5, 2002, before the finding of this indictment, the said RAYMOND GRIGGS AKA "RAY RAY" did unlawfully, feloniously and recklessly possess a handgun after being convicted of Intent to Deliver Schedule II (cocaine) Controlled Substance on December 16, 1999 in the Circuit Court of Fayette County, Docket # 4805, in violation of T.C.A. 39-17-1307, against the peace and dignity of the State of Tennessee.

It is a well settled principle that "indictments are not evidence of the commission of a prior crime." *State v. Miller*, 674 S.W.2d. 279, 284 (Tenn. 1984). They are merely "accusations made by the . . . indicting authority upon such information as that authority had at the time." *Id*. Therefore, an indictment cannot serve as evidence upon which Defendant may be found guilty of a prior felony offense.

The second reference to the record is to page 75, Volume II of the record:

Volume II, page 74 line 22 thru page 75 line 18 reflects the following:

**GENERAL DYCUS:**        Your Honor, if I may, I have one matter, if I could have this marked as Exhibit No. 4, please.

**(TRIAL EXHIBIT NO. 4 MARKED AND FILED FOR IDENTIFICATION PURPOSES ONLY).**

**GENERAL DYCUS:**        Your Honor, I'm going to pass the Court Exhibit 4 and ask the Court to take judicial notice of a conviction that would prohibit the defendant from possessing in any way a handgun or a firearm. I'm not going to ask that that be published.

**THE COURT:**        Be made for identification.

**GENERAL DYCUS:**        **I'd ask the Court to take judicial notice of it and accept it into evidence.**

**THE COURT:**        **All right, sir.**

**GENERAL DYCUS:**        That's the State's case, Your Honor.

(emphasis added).

Tennessee Rule of Evidence 201 provides as follows:

**Rule 201.  Judicial notice of adjudicative facts. ----**

(a)     Scope of Rule. ---- This rule governs only judicial notice of adjudicative facts.

(b)     Kinds of Facts. ---- A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c)     When Discretionary. ---- A court may take judicial notice whether requested or not.

(d)     When Mandatory. ---- A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e)     Opportunity to Be Heard. ---- A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.  In the absence of prior notification, the request may be made after judicial notice is taken.

(f)     Time of Taking Notice. ---- Judicial notice may be taken at any stage of the proceeding.

(g)     Instructing the Jury. ---- In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed.  In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

The exhibit submitted to the court for it to take judicial notice as indicated above, is a judgment of conviction of Raymond Griggs for the Class B felony offense of possession of 0.5 grams or more of cocaine with intent to deliver.  The judgment was signed by the same trial judge who presided over the trial which is the subject of this appeal.  The copy was also certified by the circuit court clerk as a true and correct copy of the judgment entered in the previous case.

According to of the Tennessee Rule of Evidence 201(b)(2), a fact subject to judicial notice must be one "not subject to reasonable dispute," which includes a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b)(2).  Court records, such as judgments, are included within this category. *See State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999).

Pursuant to Tennessee Rule of Evidence 201(e), a party objecting to the court taking judicial notice of a fact has the opportunity to be heard as to his or her objection. Defendant made no objection to the court taking judicial notice of the fact of Defendant's prior conviction for a felony drug offense. Finally, section (g) of Rule 201 provides in part that "[i]n a criminal case, the Court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Tenn. R. Evid. 201(g). Furthermore, Tennessee Rule of Criminal Procedure 30.1 states that the jury "shall" take to the jury room all exhibits when it retires to consider its verdict, with the exception of depositions, unless the trial court determines that an exhibit should not be taken to the jury room. Neither the jury instructions that the Court gave the jury at the conclusion of the trial, nor any proceedings immediately prior to the jury retiring to reach a verdict, are included in the record. In his request for a transcript for appeal, Defendant included a request that the jury charge be transcribed. On March 7, 2005, the trial court entered an order amending the designation of the record to be transcribed, limiting it only to pre-trial motions and trial testimony. Defendant mentioned this in his brief which was submitted for filing on May 31, 2005, and therefore was aware of the limited record at the time he filed his brief. However, he did not file a motion to supplement the record to include any portion that would reflect any proceedings specifically related to this issue on appeal.

It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). In the absence of a complete record, we must presume that the trial court properly instructed the jury and submitted the exhibit consisting of the judgment for the prior convictions to the jury during its deliberation. Defendant is not entitled to relief on this issue.

B. Challenge to the Evidence that Defendant Possessed the Handgun.

Possession of a handgun may be actual or constructive possession. *See State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991). "Actual possession" has been defined as "when a tangible object is in the immediate possession or control of the party." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). "Constructive possession requires that a person knowingly have the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession has been recognized as "the ability to reduce an object to actual possession." *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)).

The proof in this case, taken in the light most favorable to the prosecution, as we must do, shows that Defendant was well aware that a loaded 40 caliber Glock semi-automatic pistol was located in his bedroom, and specifically, amongst his clean, folded clothes in a laundry hamper. The State was not required to prove that Defendant was the registered owner of a handgun in order to show that he was in possession of same. The proof showed Defendant was in constructive possession of the handgun, beyond a reasonable doubt. Defendant argues in his brief as follows:

"Possession of a gun at one's house is not a violation of the statute. Moreover, being in a house where a gun belonging to another person is located is also not a violation of the statute." Defendant fails to cite any case law or other authority in support of these assertions. The statute in question does not make an exception for Defendant's first assertion, that possession of a handgun in one's own house is not a violation of the statute. Defendant's second assertion may be literally correct if one assumes a defendant is not in possession of the handgun. We have concluded that the proof was that Defendant was in constructive possession of the handgun.

Defendant is not entitled to relief on this issue.

## IV. Motion to Suppress

Defendant next argues that the trial court erred in failing to grant his motion to suppress all evidence seized from his house during execution of the search warrant. In his motion to suppress, Defendant argues that the search warrant "failed to satisfy the specificity requirements of the law, was without legal authorization, and was a violation of Defendant's constitutional rights guaranteed under the Fourth Amendment of the Constitution of the United States and Article I, section 7 of the Constitution of the State of Tennessee." Defendant also asserts that "he is not the owner of said property [to be searched] and that he was unaware that contraband was "contained in this hole in the wall of the house." This is the extent of Defendant's argument as presented in his motion to suppress.

When a defendant seeks to suppress evidence allegedly seized in violation of the state and federal constitutions, the defendant must first file a motion to suppress, prior to trial, and notify the trial court so that the court can rule on the motion. *See State v. Burtis*, 664 S.W.2d 305, 310 (Tenn. Crim. App. 1983); Tenn. R. Crim. P. 12(b)(3). A motion to suppress is required to "state with particularity the grounds upon which it is made." Tenn. R. Crim. P. 47. As such, before an accused is entitled to an evidentiary hearing, the motion "must be sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim [was] presented." *State v. Davidson*, 606 S.W.2d 293, 297 (Tenn. Crim. App. 1980) (citing *United States v. Cranson*, 453 F.2d 123, 126 (4th Cir. 1971), *cert. denied*, 406 U.S. 909, 92 S. Ct. 1607, 31 L. Ed. 2d 821 (1972) (quoting *Cohen v. United States*, 378 F.2d 751, 761 (9th Cir. 1967), *cert. denied*, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967)). Without such detail, it would be difficult, if not impossible, for a trial court to review the motion to determine whether a legitimate issue existed which entitled the defendant to an evidentiary hearing. *State v. Jefferson*, 938 S.W.2d 1, 9 (Tenn. Crim. App. 1996).

In the present case, the motion to suppress, in its entirety, states as follows:

Comes now the defendant, Raymond Griggs, Jr. by and through his attorney of record, Shana Johnson, and moves this Honorable Court to suppress all evidence procured by the State of Tennessee as a result of law enforcement officers executing a search warrant on a residence at 110 Griggs Way, Moscow, TN when said affidavit requested a "warrant be issued to search the person(s) and premises of the said

Raymond Griggs" and then a search warrant issued for the search of "a residence, 110 Griggs Way, all vehicles and outbuildings on said property." Defendant contends that although he was at said residence, he is not the owner of said property and that he was unaware that contraband was "contained in this hole in the wall of the house." Further Defendant contends the search of this residence failed to satisfy the specificity requirements of the law, was without legal authorization and was a violation of Defendant's constitutional rights guaranteed under the Fourth Amendment of the Constitution of the United States and [a]rticle 1, [s]ec. 7 of the Constitution of the State of Tennessee both of which prohibit unreasonable search and seizures.

At the conclusion of Officer Freeman's testimony, defense counsel's entire argument in support of the motion to suppress is as follows:

> **[DEFENSE COUNSEL:]** Your Honor, I would just submit that this search violated my client's Fourth Amendment right[s], his due process rights, and his rights to his privacy in his home. Also, I think there's a genuine issue there are other people present, and I would submit it.

The motion filed by Defendant contained bare allegations of law and little or no factual allegations. The motion did not identify the manner or circumstances in which Defendant's rights were violated, who violated his rights, or what items were seized or searched in violation of his rights. This minimal content does not meet the requisite standards as set forth in Rule 47 of the Tennessee Rules of Criminal Procedure and this Court's decision in *Davidson*. *Davidson*, 606 S.W.2d at 297. Because Defendant's motion did not meet these requirements, as a matter of law, Defendant was not entitled to an evidentiary hearing. However, a trial court may conduct an evidentiary hearing incident to a motion to suppress notwithstanding the deficiency in the pleadings. *Jefferson*, 938 S.W.2d at 9.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Odom*, 928 S.W.2d at 22-23.

In his brief on appeal, Defendant asserts that the evidence seized as a result of the search warrant should have been suppressed because the warrant did not mention that a firearm should be seized, and therefore it did not properly describe the item to be searched and seized. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; T.C.A. § 40-6-103. Defendant also argues that the search warrant was likewise deficient because it did not state the quantity or packaging of the drugs to be seized or that a "book" or money were objects of the search.

Applying the above stated principles, we conclude that the trial court properly denied Defendant's motion to suppress. Defendant's motion stated that his Fourth Amendment rights were violated, but failed to assert any facts or circumstances regarding the manner in which this violation occurred. At the suppression hearing, he briefly argued that the warrant lacked specificity and legal authorization, but did not indicate what caused this deficiency. The evidence presented at the hearing was not within the scope of the issues raised in Defendant's motion to suppress, thus the shortcomings of the motion itself were not remedied at the hearing. Nor do the issues raised at the hearing preponderate against the trial court's denial of the motion to suppress. On appeal, Defendant again seeks to suppress evidence from the search by making arguments not raised in the trial court. However, Defendant is precluded from raising this issue on appeal because he failed to properly raise the issue in his motion to suppress or at the evidentiary hearing. Tenn. R. Crim. P. 12(f). Defendant is not entitled to relief on this issue.

**CONCLUSION**

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE