IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2020

**STATE OF TENNESSEE v. DONNIE BRIDGES**

**Appeal from the Criminal Court for Knox County**
**No. 105703   Bobby R. McGee, Judge**

_____

**No. E2019-01003-CCA-R3-CD**

_____

The Appellant, Donnie Bridges, was convicted in the Knox County Criminal Court of driving under the influence (DUI) per se, third offense, a Class A misdemeanor; simple possession of cocaine, a Class A misdemeanor; and driving on a revoked license, a Class B misdemeanor. After a sentencing hearing, the trial court sentenced him to eleven months, twenty-nine days for DUI to be served as 120 days in jail followed by supervised probation; eleven months, twenty-nine days for simple possession to be served on supervised probation consecutive to the DUI sentence; and six months for violating the driver's license law to be served on supervised probation concurrently with the DUI sentence. On appeal, the Appellant contends that the trial court erred by refusing to dismiss the presentment or suppress his blood test results because the State failed to preserve his blood sample, that the trial court committed plain error by admitting the results of his blood test into evidence because the State failed to establish a chain of custody for his blood sample, and that the evidence is insufficient to support his convictions of DUI per se, third offense, and driving on a revoked license. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Jonathan P. Harwell (on appeal) and Deno Cole, Patrick Leonard, and Jessica Greene (at trial), Knoxville, Tennessee, for the appellant, Donnie Bridges.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Charme P. Allen, District Attorney General; and Greg Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

## I.  Factual Background

In June 2015, the Appellant was charged by presentment with DUI per se, third offense; DUI, third offense; simple possession of cocaine; and driving on a revoked license, third offense.  At trial, Detective Donald Ferrell of the Knox County Sheriff's Office (KCSO) testified that in July 2014, he was a patrol officer.  He acknowledged that part of his job included investigating DUIs and that he had specialized training in identifying impaired drivers.  On July 31, Detective Ferrell was driving a new Dodge Charger that was not yet equipped with a video camera.  About 8:45 p.m., he was driving by Merchants Road on Interstate 75 North when he heard a call about a possible intoxicated person on a motorcycle at the Weigel's on Central Avenue Pike.  Detective Ferrell responded to the call and arrived at the Weigel's within two to three minutes.

Detective Ferrell testified that he noticed one motorcycle parked at the gas pumps, that he pulled in behind the motorcycle, and that he got out of his patrol car.  Detective Ferrell said that he saw the Appellant "come around the front of a truck, headed towards his motorcycle" and that the Appellant was "staggering a little bit, almost like he was going to fall."  When the Appellant saw Detective Ferrell, the Appellant "kind of took a . . . 45-degree angle" away from the officer and approached a garbage can.  The Appellant reached into his right pocket, acted like he was coughing, and "tossed" something into the can.  Detective Ferrell walked up to the Appellant and asked what he had just thrown away, and the Appellant "mumbled 'cocaine.'"  Detective Ferrell arrested the Appellant and handcuffed him.

Detective Ferrell testified that he "ran" the license plate on the motorcycle and that motorcycle was registered to the Appellant.  He said that he did not have the Appellant perform field sobriety tests because he thought the Appellant could fall and injure himself due to the level of the Appellant's intoxication.  Detective Ferrell also did not have the Appellant perform field sobriety tests because the Appellant had just tried to destroy evidence by throwing cocaine into a garbage can.  The Appellant smelled of alcohol, and Detective Ferrell did not know if the Appellant had consumed cocaine with alcohol.  Detective Ferrell said he thought the Appellant was "in no condition to [take] those tests."

Detective Ferrell testified that he put the Appellant into the back of his patrol car, that he put on gloves, and that he began "digging" into the garbage can.  A couple of McDonald's bags were in the can, and a baggie of white powder was on the "very bottom" of the can.  Another officer transported the Appellant to the Knox County Detention Facility for a blood draw.  Meanwhile, Detective Farrell was "still gathering information and dealing with the motorcycle."  Detective Farrell said that he "secured" the cocaine by putting it into his patrol car and that the cocaine was sent to the Tennessee Bureau of Investigation (TBI) for testing.

Detective Ferrell testified that he checked the Appellant's driver's license and that the license had been revoked. He acknowledged that the Weigel's on Central Avenue Pike was a place frequented by the public. On cross-examination, Detective Ferrell acknowledged that he did not see the Appellant driving the motorcycle.

Michael Tiller, a forensic scientist with the TBI Crime Laboratory, testified as an expert in forensic toxicology that he analyzed the Appellant's blood sample. The Appellant's blood was drawn at 10:39 p.m. on July 31 and had a blood alcohol content (BAC) of 0.114 gram percent. Because the Appellant's BAC was more than 0.85 gram percent, the State had met its "burden," so Tiller did not test the Appellant's blood for cocaine. He explained that if a person consumed alcohol "on an empty stomach," then the person would start absorbing the alcohol immediately and the person's BAC would reach its maximum level within one-half to one hour. If food was in the person's stomach, then the person's absorption of the alcohol would be delayed and the person's BAC would reach its maximum level within one and one-half to two hours. Tiller said that the human body started eliminating alcohol immediately after it was absorbed and that a person's BAC ordinarily decreased at a rate of 0.015 gram percent per hour. However, an "extremely experienced" alcohol consumer could eliminate alcohol at 0.03 gram percent per hour.

On cross-examination Tiller acknowledged that two tubes of blood were usually collected from a defendant but that the TBI ordinarily tested only one tube. Tiller did not analyze the Appellant's second blood tube, and the TBI destroyed the Appellant's blood sample almost ten months after it was collected. Tiller acknowledged that he could not determine the Appellant's BAC prior to the Appellant's blood draw at 10:39 p.m. He also acknowledged that he could not say the Appellant's BAC was 0.08 percent when the Appellant was allegedly operating the motorcycle. The Appellant's BAC could have been less than 0.08 percent.

Carl Smith of the TBI Crime Laboratory testified as an expert in forensic chemistry that he tested the white powder collected from the garbage can. The powder weighed 0.53 grams and was cocaine.

At the conclusion of Smith's testimony, the State rested its case. The Appellant did not present any proof, and the jury convicted him of DUI per se, simple possession of cocaine, and driving on a revoked license. The jury acquitted him of DUI. Immediately thereafter, the trial court held a bifurcated hearing. The jury found that the Appellant had two prior DUI convictions and found him guilty of DUI per se, third offense.

After a sentencing hearing, the trial court sentenced the Appellant to eleven months, twenty-nine days for DUI per se and DUI per se, third offense, Class A misdemeanors, and merged the convictions. The trial court sentenced the Appellant to a consecutive sentence of eleven months, twenty-nine days for simple possession, a Class A misdemeanor. The trial court ordered that the Appellant serve the DUI sentence as 120 days in jail followed

by supervised probation and that he serve the sentence for simple possession on supervised probation. The trial court sentenced the Appellant to six months for driving on a revoked license, a Class B misdemeanor, to be served on supervised probation concurrently with the DUI sentence.

## II. Analysis

### A. Ferguson Motion

The Appellant claims that the trial court erred by denying his motion to dismiss the presentment or suppress the result of his blood test pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), because the State failed to preserve his blood sample. The State argues that the Appellant has waived this issue because he failed to include it in his motion for new trial. The Appellant requests that we review the issue for plain error. We conclude that the Appellant is not entitled to plain error relief.

Before trial, the Appellant filed a motion to dismiss the presentment or suppress the result of his blood test, claiming that the State's failure to preserve his blood sample violated Ferguson. During a hearing on the motion, Michael Tiller testified for the State as an expert in forensic toxicology that the TBI received the Appellant's blood sample on August 7, 2014, and that he analyzed the sample on September 23, 2014. The Appellant's blood had an alcohol content of 0.114 gram percent. After Tiller analyzed the Appellant's blood sample, he put the sample into the "destroy location."

Tiller testified that it was the TBI's policy to "hold" evidence if the TBI received a request to do so pursuant to a judge-issued court order. To Tiller's knowledge, the TBI did not receive a request to preserve the Appellant's blood sample. Therefore, the TBI destroyed the sample on April 6, 2015. Tiller said that the TBI did not have infinite storage capacity and that the Appellant's official alcohol report provided that the TBI would destroy the evidence in sixty days. He acknowledged that the TBI destroyed the Appellant's blood sample approximately five months after he analyzed the sample.

On cross-examination, Tiller testified about the process in which he received blood samples for analysis. He explained that "the officer or evidence person for an agency" would bring a defendant's DUI kit box to the TBI and deposit the kit box into a "receptacle." The receptacle was inside the TBI, and the officer had to be "buzzed" into the building in order to access the receptacle. A TBI forensic technician emptied the receptacle at the end of the day, opened each kit box, and assigned a specific laboratory identification number to each defendant's blood sample. The technician then placed the samples into the TBI vault until a forensic scientist requested a sample from the forensic evidence department. At that point, a forensic technician would remove the sample from the vault and give it to the forensic scientist, who would take the sample into the toxicology section for analysis.

Tiller testified that the Appellant's blood was collected on July 31, 2014, and that the KCSO delivered the Appellant's blood sample to the TBI on August 7. Angel Smith, a TBI forensic technician, removed the sample from the TBI receptacle, assigned a number to the Appellant's blood tubes, and put the tubes into the TBI vault. Tiller said that he did not know where the Appellant's blood tubes were located or the conditions in which the tubes were stored prior to the KCSO depositing the Appellant's kit box into the TBI receptacle. On August 25, 2014, forensic technician Leeanne Corbett removed the Appellant's blood tubes from the TBI vault and gave them to Tiller for testing. Tiller placed the tubes in a locked refrigerator. On September 15, 2014, he began preparing the tubes for testing. He stated that blood tubes were "allowed to come to room temperature" prior to testing and that the transition from refrigeration to room temperature did not affect the blood as long as the blood was in "standard gray-top tubes that have preservatives and anticoagulant in it." The Appellant's blood was in standard tubes. After Tiller analyzed the Appellant's blood sample, he placed the Appellant's blood tubes into a "destroy refrigerator." On April 6, 2015, Margaret Massengill removed the tubes from the refrigerator and destroyed the Appellant's blood sample.

Tiller testified that it was TBI policy to keep a blood sample after testing for "at least" sixty days. At the time the Appellant's sample was tested, though, the TBI had the capacity to store samples for up to six months. Therefore, the TBI was storing blood samples for almost six months.

At the conclusion of the hearing, defense counsel advised the trial court that the Appellant originally was charged with DUI in general sessions court but that that case was dismissed. The TBI destroyed the Appellant's blood sample the day before the dismissal. The criminal court presentment was issued two and one-half months later, and defense counsel was appointed to represent the Appellant. However, defense counsel "had no opportunity to do anything" with the Appellant's blood sample because the TBI had destroyed it. The State responded that the Appellant was represented by counsel for nine months in general sessions court and that the Appellant never requested that his sample be preserved for independent testing. The trial court found that the State had a duty to preserve the evidence because "[t]he general rule is that the State must preserve all evidence subject to discovery under Rule 16 and probably [Brady]." However, the court determined that the Ferguson factors did not warrant dismissal of the presentment or suppression of the blood test results.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In Ferguson, 2 S.W.3d at 915-18, our supreme court addressed the issue of when a defendant is entitled to relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence. Ferguson, 2 S.W.3d at 917. Ordinarily, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. That said,

> [w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
>
> 3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options such as dismissing the charges or providing an appropriate jury instruction. Id. This court ordinarily reviews the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review. State v. Merriman, 410 S.W.3d 779, 791 (Tenn. 2013).

Turning to the instant case, we initially note that we can only review the issue for plain error because the Appellant failed to include the issue in his motion for new trial. See Tenn. R. App. P. 3(e). An error rises to the level of plain error when all five of the following factors are met:

a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotation marks and citation omitted).

We disagree with the trial court's finding that the State had a duty to preserve the Appellant's blood sample. Generally, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Ferguson, 2 S.W.3d at 917. Moreover, a blood sample taken from a defendant typically is subject to discovery under Tennessee Rule of Criminal Procedure 16(a)(1)(F). See State v. Gilbert, 751 S.W.2d 454, 460 (Tenn. Crim. App. 1988); see also Tenn. Code Ann. § 55-10-408(e) (providing that "[t]he person tested shall be entitled to have an additional sample of blood or urine procured and the resulting test performed by any medical laboratory of that person's own choosing and at that person's own expense"). However, "the State is not required to preserve samples taken for the limited purpose of determining the defendant's blood-alcohol level." State v. Jordan, 325 S.W.3d 1, 82 (Tenn. 2010) (appendix) (citing Trombetta, 467 U.S. at 491). Moreover, "it is apparent that blood cannot be preserved indefinitely." State v. Grace Ann Blair, No. M2015-01231-CCA-R3-CD, 2016 WL 6776356, at *8 (Tenn. Crim. App. at Nashville, Nov. 16, 2016) (citing Jordan, 325 S.W.3d at 82 (appendix)).

Here, Michael Tiller analyzed the Appellant's blood sample on September 23, 2014, and the TBI destroyed the sample on April 6, 2015. By our calculations, the TBI destroyed the sample more than six months after Tiller analyzed it and well-beyond the TBI's sixty-day policy for keeping blood samples. Therefore, the State did not breach an unequivocal rule of law when it destroyed the evidence, and the Appellant is not entitled to plain error relief.

## B. Chain of Custody

The Appellant claims that the trial court committed plain error by admitting the result of his blood test into evidence because the State failed to prove "crucial" links in the chain of custody for his blood sample. Specifically, the Appellant contends that the State failed to provide a chain of custody for his blood draw on July 31, 2014, the storage of his blood sample for the next seven days, and the delivery of his blood sample to the TBI on

- 7 -

August 7, 2014. The State argues that the Appellant is not entitled to plain error relief. We agree with the State.

At the hearing on the motion to dismiss the presentment or suppress the evidence, the Appellant challenged only the TBI's destruction of his blood sample. He did not challenge the chain of custody for the sample. Even when Michael Tiller testified on cross-examination that he did not know where the Appellant's blood tubes were located or the conditions in which the tubes were stored from July 31 to August 7, 2014, the Appellant did not argue that the trial court should suppress the evidence based on the failure to show a chain of custody. Moreover, the following exchange occurred during Tiller's direct examination testimony at the hearing:

> Q.    Is that your chain of custody paperwork?
>
> A.    I've got chain of custody. I've got the submittal form that the officer submitted with the case report. I have my raw data, and I also have the official alcohol report that we report at the end of our testing.
>
> THE COURT:  Is that sufficient?
>
> [Defense counsel]:  Yes. At this time anyway.

Defense counsel requested a copy of Tiller's internal chain of custody, and the State agreed to provide it immediately. However, the State only introduced the Appellant's official alcohol report into evidence at the hearing and at trial. Therefore, the "submittal form" mentioned by Tiller is not in the record before us.

Generally, Tennessee Rule of Evidence 901 governs the authentication of evidence. In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). "Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering." State v. Cannon, 254 S.W.3d 287, 296 (Tenn. 2008). However, the circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). "The purpose of the chain of custody is to 'demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). Usually, whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in

the absence of a clearly mistaken exercise of that discretion.  Holbrooks, 983 S.W.2d at 701.

Given that the primary evidence against the Appellant for DUI per se was the result of his blood test, we are perplexed that the State failed to present a chain of custody for the Appellant's blood sample from the time of its collection until it was deposited into the TBI receptacle seven days later.  We are also perplexed that the Appellant failed to raise this issue in the trial court or in his motion for new trial.  As this court has explained, "Had such objection been made such a defect might well have been supplied or the trial court would have had the opportunity to exclude this evidence.  This is not a matter of plain error and the failure to object precludes the defendant from relying on this as grounds for upsetting the verdict."  State v. Davidson, 606 S.W.2d 293, 298 (Tenn. Crim. App. 1980).  Therefore, we cannot say that a clear and unequivocal rule of law was breached, that a substantial right of the accused was adversely affected, or that consideration of the error is "necessary to do substantial justice."  The Appellant is not entitled to plain error relief.

C.  Sufficiency of the Evidence

The Appellant raises several issues regarding the sufficiency of the evidence for his convictions of DUI per se, third offense, and driving on a revoked license.  The State argues that the evidence is sufficient.  We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).  The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury.  Id.  Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the

jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 55-10-401(a)(2) provides that a person commits DUI per se when the person drives or is in physical control of a vehicle "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large" while the person's BAC is 0.08 percent or more. Tennessee Code Annotated section 55-50-504(a) prohibits a person from driving a motor vehicle on a public highway or on any premises frequented by the public at large when the person's privilege to do so is cancelled, suspended, or revoked.

First, the Appellant claims that the State failed to prove he was driving or in physical control of the motorcycle under the totality of the circumstances test adopted in State v. Lawrence, 849 S.W.3d 761 (Tenn. 2003). In a related argument, he contends that because the State failed to show he was driving or in physical control of the motorcycle, it consequently failed to prove he was driving on a revoked license.

In Lawrence, our supreme court stated that inquiry into determining whether a defendant actually drove a vehicle or was in physical control of a vehicle "is highly factual and that all circumstances should be taken into consideration by the trier of fact." State v. Butler, 108 S.W.3d 845, 850 (Tenn. 2003) (emphasis added). The court went on to state that the following specific factors also can be considered:

> the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Lawrence, 849 S.W.2d at 765. The factors "can be used as circumstantial evidence that the defendant had been driving the vehicle." Id. at 765.

Turning to the instant case, the record reflects that the trial court instructed the jury on the Lawrence factors. Taken in the light most favorable to the State, the evidence shows that on July 31, 2014, Detective Ferrell responded to a call about a possible intoxicated person on a motorcycle at the Weigel's on Central Avenue Pike. Detective Ferrell arrived at the scene within just two or three minutes and saw one motorcycle parked at the gas pumps. He pulled in behind the motorcycle and got out of his patrol car. The Appellant was walking toward the motorcycle, which was registered to him. Upon seeing Detective

- 10 -

Ferrell, the Appellant turned from the officer and walked to a garbage can. The State did not present any proof as to the whereabouts of the ignition key for the motorcycle, whether the motor was running, or whether the motorcycle was operable. However, the fact that the Appellant was walking toward a motorcycle that was registered to him weighed in favor of finding he was driving or in physical control of the motorcycle. Furthermore, the fact that the motorcycle was parked at a gas pump gives rise to an inference that vehicle was capable of being operated or moved under its own power, that the driver had been operating the vehicle recently, and that the driver was planning to continue operating the vehicle. Therefore, we conclude that the circumstantial evidence is sufficient to show that the Appellant had been driving or was in physical control of the motorcycle. Accordingly, the evidence is also sufficient to show that the Appellant, whose license had been revoked, was driving on a revoked license.

Second, the Appellant claims that the State was required to prove in this case that he was operating the motorcycle both on a public road or highway and on premises generally frequented by the public at large and that the State failed to prove either. He asserts that the State was required to prove both elements because the presentment charged him in the conjunctive and because the trial court instructed the jury in the conjunctive. The State argues that it was not required to prove both and that, it any event, it did so. We agree with the State.

Although Tennessee Code Annotated section 55-10-401(a)(2) provides that a person commits DUI per se when the person drives or is in physical control of a vehicle "on any of the public roads and highways of the state . . . or any other premises that is generally frequented by the public at large," the presentment alleged that the Appellant "did drive and was in physical control of a motor driven vehicle on a public roadway and premises generally frequented by the public at large." (Emphasis added.) Likewise, the trial court instructed the jury that the State had to prove beyond a reasonable doubt that the Appellant was driving or in physical control of a motor vehicle "on a public road or highway and a location which is generally frequented by the public at large."[1] (Emphasis added.)

As noted by the Appellant, this court has said that "not only must the government prove the crime it charges, it must charge the crime it proves." State v. Goodson, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). However, Goodson is quite distinguishable from the instant case in that Mr. Goodson was indicted for and convicted of driving on a revoked license when the proof at trial showed he was driving on a suspended license. Id.

---

[1] We note that the presentment also incorrectly alleged that the Appellant "did drive and was in physical control of a motor vehicle." (Emphasis added.) However, the Appellant apparently does not take issue with that error because the trial court instructed the jury in the disjunctive. Moreover, this court previously has refused to grant relief when an indictment for DUI alleged that the defendant drove and was in physical control of a motor vehicle. State v. Zan Ray McCracken, No. E2000-1762-CCA-R3-CD, 2001 WL 812250, at *3 (Tenn. Crim. App. at Knoxville, July 19, 2001).

at 244-45. Furthermore, the argument that the State must prove both elements if the State indicts for both elements has previously has been rejected by this court. See State v. Zonge, 973 S.W.2d 250, 254 (Tenn. Crim. App. 1997) ("Historically, when two means of committing an offense were charged in the conjunctive in a single count of an presentment as part of the same transaction, proof of either sufficed to support a conviction."); State v. Zan Ray McCracken, No. E2000-1762-CCA-R3CD, 2001 WL 812250, at *3 (Tenn. Crim. App. at Knoxville, July 19, 2001) ("Unfortunately for the defendant, this same argument based on the contrast between an indictment charging in the conjunctive while the statute defines the offense in the disjunctive has not met with success.").

Regardless, we agree with the State that even if the conjunctive language bound the State to the higher burden of proof that the Appellant drove both on a public roadway and on premises frequented by the public at large, the evidence is sufficient to satisfy both elements. For the reasons discussed above, a reasonable jury could conclude that the Appellant drove the motorcycle on a public roadway and onto the Weigel's property. Thus, the evidence is sufficient to support the convictions.

Finally, the Appellant contends that the State failed to prove his BAC was 0.08 percent or more when he was driving or in physical control of the motorcycle. In support of his argument, he notes that his blood was drawn more than one and one-half hours after Detective Ferrell stopped and arrested him; that the State did not provide any explanation for where his blood sample was located from the day it was collected, July 31, until the day it was delivered to the TBI, August 7; and that the State did not provide any proof of the storage conditions for his blood sample during that seven-day period of time. He further notes that the State's own witness testified that BAC levels could rise or fall over time and that there was a time delay between a person's alcohol consumption and a rise in the person's BAC. The State contends that the evidence is sufficient because Detective Ferrell testified that the Appellant was staggering and unsteady on his feet. The Appellant replies that the jury "acquitted" him of that conduct because it found him not guilty of DUI by impairment.

We conclude that the evidence is sufficient to show that the Appellant's BAC was 0.08 percent or more. The Appellant acknowledges that this court has held that the State is not required to present expert extrapolation testimony in order to convict a defendant of DUI per se. See State v. Greenwood, 115 S.W.3d 527, 532 (Tenn. Crim. App. 2003). In addition, "a proper blood alcohol test administered at a reasonable time after the [accused] has been driving, which reflects a blood alcohol content of [.08 percent] or higher, constitutes circumstantial evidence upon which the trier of fact may, but is not required to, convict the [accused] of DUI [per se]." Id. at 532-33. "Any delay between driving and testing may be considered by the trier of fact as to the weight to be given the test." Id. at 533.

This court has upheld a defendant's conviction for DUI per se when his blood, which was drawn about one hour after a police officer stopped his vehicle, was found to have a BAC of 0.12 percent. Id. at 529. Likewise, this court has upheld convictions of DUI per se when a defendant's blood was drawn several hours after the defendant was involved in a motor vehicle accident. State v. Anthony J. Bookout, Sr., No. W2016-01694-CCA-R3-CD, 2017 WL 1103050, at *4 (Tenn. Crim. App. at Jackson, Mar. 24, 2017); State v. Gary Darrell Dickey, No. W2005-00722-CCA-R3-CD, 2005 WL 3533325, at *3 (Tenn. Crim. App. at Jackson, Dec. 22, 2005); State v. Daniel Blake, No. W2004-01253-CCA-R3-CD, 2005 WL 1467907, at *4-5 (Tenn. Crim. App. at Jackson, June 21, 2005).

In this case, Detective Ferrell stopped and arrested the Appellant at approximately 8:50 p.m., and his blood was drawn at 10:39 p.m., less than two hours later. The delay between the Appellant's arrest and his blood draw was a consideration for the jury in determining the weight to be given to the results of his BAC analysis. The Appellant's claim that the State failed to present any proof as to the location of his blood sample or the conditions under which his sample was stored for seven days relates to the admissibility of the evidence, which we have already addressed.

As to the jury's acquitting the Appellant of DUI based upon his indications of impairment, the Appellant argues that the jury did not believe he was impaired. However, this court has stated that "[w]ell-established precedent . . . prevents this court from speculating as to the jury's rationale for convicting him of one count of DUI while acquitting him of another." State v. Robert White, No. E2010-02238-CCA-R3-CD, 2011 WL 5335471, at *3 (Tenn. Crim. App. at Knoxville, Nov. 2, 2011). Thus, we conclude that the evidence is sufficient to sustain the Appellant's convictions of DUI per se.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 13 -